## THE ROSEDALE.

## THE CYGNUS.

(District Court, S. D. New York.    October 25, 1905.)

COLLISION—VESSEL AT END OF PIER—VIOLATION OF STATUTE.

    A steamer using the end of a pier as a landing place in the North river, in violation of Laws N. Y. 1897, p. 314, c. 378, § 879, which provides that such use shall be unlawful, *held* liable thereunder for an injury by collision to another vessel entering an adjacent slip, and also in fault for the collision in backing against the other vessel as she was passing at a safe distance.

    [Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 102.]

In Admiralty.    Suit and cross-libel for collision.

Butler, Notman & Mynderse, for the Iron Steamboat Company and the Cygnus.

James J. Macklin, for Anning J. Smith and the Rosedale.

ADAMS, District Judge.    The first of these actions, that of The Iron Steamboat Company against the steamer Rosedale, was brought to recover the damages sustained by the steamer Cygnus, owned by the libelant, in a collision with the steamer Rosedale at the foot of 22d Street, North River, on the 29th day of August, 1904.    The second action, that of Anning J. Smith against the steamer Cygnus, was brought by the cross libelant to recover the damages he sustained by reason of injuries to his steamer, the Rosedale, in the same collision.

Both vessels were side wheel steamers about 220 feet long and 64 feet beam.    They were making regular trips between New York and Coney Island.    On the afternoon of the day in question, they came to New York at about the same hour, first stopping in the vicinity of the Battery and then proceeding up the river to 22d Street, where the Rosedale had a regular landing place at the pier at the end of the street and the Cygnus on the southerly side thereof.    After leaving the Battery, they went up the river in company, the Cygnus about 200 feet further out in the river.    They kept almost together, the Rosedale slightly ahead, until off 15th Street, where the Cygnus slowed down and she was stopped off 18th or 20th Street, and the Rosedale went on to her pier and made fast there, extending about 150 feet below the southerly side.    The tide was ebb, running about 3 miles.    The Cygnus turned into her destination off about 20th Street, expecting to clear the stern of the Rosedale about 15 feet, but as she was passing the latter, a collision occurred between the stern of the Rosedale and the port side of the Cygnus, about 70 feet from the bow, which caused damage to both vessels.    This was between 5 and 6 o'clock.

The Cygnus alleges that as she was carefully proceeding to her destination and was passing the Rosedale at a safe distance the latter backed, without any warning, although it could easily have been seen that the Cygnus was entering her slip; that the Rosedale did not maintain a lookout astern; was in fault in impeding the entrance of the Cygnus to her

slip, and in mooring at the end of the pier in violation of the statute of New York.

The Rosedale alleges that as she was making her landing at the end of the pier, the Cygnus attempted to enter on the side and brought about the collision by not keeping a proper lookout, in proceeding at a too rapid rate of speed, in not giving any signal of her intention to enter, and in not waiting until the Rosedale had left her berth.

The question of whether or not the Rosedale backed has been strenuously contested, those on her testifying that she had made fast to the wharf and still remained so when the contact took place, while those on the Cygnus say that she backed 10 or 15 feet, and an otherwise safe passage on the part of the Cygnus was prevented by such movement. The preponderance of proof seems to be decidedly with the Cygnus. A number of witnesses on her say explicitly that they saw the Rosedale's walking beam going, her paddle wheels reversing and that she actually backed for a short distance before the vessels came together. This is confirmed by two disinterested witnesses who were standing on the pier and there can be no reasonable doubt that the contention of the Cygnus in this respect should be sustained. I do not think any fault can be found with the Cygnus in her manner of approach. She provided for an ample margin of safety if the Rosedale had remained at her landing place until the Cygnus had reached hers and there evidently would have been no collision if the Rosedale had remained quietly at the pier. The absence of a signal on her part seems to be of no importance.

The Rosedale was also in fault for using the end of the pier as a landing place, even though she only expected to remain there a few minutes.

The New York statute provides (chapter 378, p. 314, Laws 1897, § 879) as follows:

"It shall not be lawful for any vessel, canal boat, barge, lighter or tug to obstruct the waters of the harbor by lying at the exterior end of the wharves in the waters of the North and East river except at their own risk of injury from vessels entering or leaving any adjacent dock or pier; and any vessel, canal boat, barge, lighter or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier."

This case seems to fall directly within the terms of the statute. As in The Chauncey M. Depew (C. C. A.) 139 Fed. 236, the Rosedale occupied water which was required for the use of a vessel properly bound to a berth on the side of the same pier and I see no escape for the Rosedale from liability under the express provisions of the statute.

There will be a decree for The Iron Steamboat Company, with an order of reference, and the libel against the Cygnus will be dismissed.